IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MICHAEL R. TURNER                                                                              PLAINTIFF

      v.           Civil No. 5:16-cv-05297

SHERIFF TIM HELDER; DR. ROBERT
KARAS; KARAS MEDICAL SERVICES;
SERGEANT J. BYRD (#414); NURSE
LANDON HARRIS; and R. WALKER                                                        DEFENDANTS


**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

This is a civil right case filed by the Plaintiff pursuant to 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*.

Plaintiff is currently incarcerated in the Benton Unit of the Arkansas Department of Correction (ADC). At all times relevant to this Complaint, Plaintiff was incarcerated in the Washington County Detention Center (WCDC). Plaintiff contends his constitutional rights were violated when he was forced to wait fifty-one days for treatment of a painful dental conditions.

Defendants filed a Motion for Summary Judgment (ECF No. 23). A hearing was held on July 10, 2017, to allow Plaintiff to testify in response to the Motion. Plaintiff testified by video from the ADC. At the conclusion of the hearing, the Motion was taken under advisement pending preparation of this Report and Recommendation.

# I. BACKGROUND

Plaintiff was booked into the WCDC on August 8, 2016, on pending criminal charges and a parole violation. (ECF No. 25-2 at 1-7). He reported to the booking officer that he had a toothache. (*Id.* at 5); *see also* (ECF No. 25-7 at 13).

According to Corporal Mulvaney, emergency medical services are available twenty-four hours a day at the WCDC. (ECF No. 25-1 at 2); *see also* (ECF No. 25-6 at 1-6). Officers are trained to respond to medical emergencies and can provide temporary lifesaving care while EMS or other medical personnel are in route. (ECF No. 25-1 at 2) The primary medical provider is the facility medical provider and his personnel. (*Id*). Pursuant to a contract with Washington County, Dr. Karas and Karas Correctional Health have provided all medical and dental care at the WCDC since January 1, 2016. (ECF No. 25-1 at 3). "[A]ll medical, dental, and mental health coordination for inmates at the [WCDC] is provided pursuant" to the contract. (ECF No. 25-8 at 1). All matters of judgment regarding health services are within the sole province of the contract medical staff. (ECF No. 25-1 at 3). No employee of the WCDC is authorized to make non-emergency medical decisions. (*Id*). No one in the Sheriff's Office makes any decisions as to whether or not to provide a particular medication, diagnostic testing, or medical treatment based on cost. (*Id*).

Detainees make medical and dental complaints via an electronic kiosk. (ECF No. 25-1 at 2). The complaints are reviewed by medical personnel. (*Id*).

According to Corporal Mulvaney, the WCDC acknowledges that dental health directly affects an individual's total health and medical status. (ECF No. 25-1 at 2). Detainees receive emergency dental care and other dental treatment as deemed necessary by a contract dentist. (*Id*). Emergency dental care is available to those detainees experiencing acute dental problems such as severe pain, infection, bleeding gums, etc. (*Id.* at 3). The severity of the pain or infection will determine if the

problem is an emergency. (*Id*). Medical staff are responsible for assessing whether a dental complaint constitutes an emergency. (*Id*). The contract with Dr. Karas "requires that a dentist be provided between 6 and 8 hours per month." (ECF No. 25-8 at 2). Detainees are put on the dental list when they make a complaint. "They are seen in order of their complaint." (*Id*). The dentist sees inmates on one day per month and typically sees fifteen to twenty inmates. (*Id*).

According to Dr. Karas, "[d]ental caries (cavities) are rampant in the inmate population." (ECF No. 25-8 at 2). As a result:

> the dentist list is generally full. The dental list may have 20 to 40 patients on it at a time. Anyone who is not seen is moved up the list to be seen at the next available time slot. The protocol for a typical dental complaint in the [WCDC] is to examine the area of the complaint, place the inmate on an antibiotic for 10 days to cover dental abscess in the root canal, and provide a pain killer for 10 days. Usually, an nsaid like naprosyn is used and can be given for longer than 10 days if the patient is having persistent pain.
>
> Emergent dental needs are treated immediately in the same way that . . . emergent medical needs are. However, a broken or decayed tooth would not be considered an emergency dental need.
>
> An emergent dental need would usually entail either trauma from a blow to the mouth or jaw (causing a lost, but intact tooth, that could be put back into place) or fever and a marked amount of facial swelling due to dental abscess. For a mild abscess, medical providers at the jail could drain most of these types of abscesses. If that is not possible, the inmate could be sent to the Emergency room, but not necessarily to a dentist.

(*Id*).

Approximately a week before his arrest, Plaintiff knew he had a cavity. (ECF No. 25-7 at 17-18). Any pain he was in as a result of the cavity may have been masked because of his illegal drug use. (*Id.* at 19-20 & 70). A few days prior to Plaintiff's arrest, when he was flossing, a piece of his tooth fell out. (*Id.* at 18). He did not go to the dentist before his arrest to have this fixed. (*Id.*

at 19). He did not seek help with the pain. (*Id*). The cavity had not progressed enough that he had problems eating. (*Id*).

In fact, Plaintiff indicated he had not been to a dentist since 2007. (ECF No. 25-7 at 68). When he had cavities and/or broken teeth previously, he usually had them taken care of within two weeks. (*Id.* at 69).

On August 11, 2016, Plaintiff waived his revocation hearing and his parole was revoked. (ECF No. 25-2 at 8); (ECF No. 25-7 at 11). Plaintiff submitted his first written request for dental care on August 25, 2016. (ECF No. 25-3 at 2). Plaintiff was put on the sick call list for the next day. (*Id*). He was not seen but was instead put on the list to see the dentist and prescribed Naproxen in the interim. (ECF No. 25-4 at 16). The Naproxen prescription was for August 26th to September 22, 2016. (*Id.* at 16-17).

On August 27, 2016, Plaintiff was told he was put on the dental list. Plaintiff testified he was initially unaware he had been prescribed Naproxen. (ECF No. 25-7 at 24). Plaintiff testified that once he knew he had been prescribed the medication, he never refused it. However, Plaintiff believed there was one occasion on which he was not in the barracks to receive the medication.

Plaintiff testified that he took Naproxen for thirty-seven days until the prescription ran out. Plaintiff testified that the Naproxen did not completely eliminate the pain but that it "took the edge off."

Plaintiff testified that on September 3, 2016, the tooth broke off just above the gum line "leaving a sharp and jagged base." (ECF No. 25-3 at 4). Plaintiff stated the tooth was "extremely uncomfortable and painful as well." (*Id*). He said it made it difficult to eat. (*Id*). He asked if he could be seen by the dentist "as soon as humanly possible." (*Id*). He noted he had been complaining

about the toothache since he was booked in. (*Id*). Nurse Walker responded that the dentist only came once a month and that inmates were seen in the order they were added to the list. (*Id*). Nurse Walker stated Plaintiff was on the list, although she was not sure where on the list he fell. (*Id*). She said a dentist would be there sometime "this month." (*Id*).

On September 23, 2016, Plaintiff submitted a request stating that he put in a request on August 25, 2016, to see the dentist because he had a cavity causing him a "good amount of pain and discomfort. (ECF No. 25-3 at 6). He noted he had been told he was on this list to see the dentist and given Naproxen for the pain. (*Id*). He stated he had put in a second request to see the dentist on September 3, 2016, when the tooth broke off "causing even more pain and discomfort." (*Id*). He indicated he was told he was still on the list and his medication remained the same dose and strength. (*Id*). That day, Plaintiff stated he had been told his prescription for Naproxen had been for thirty days and ran out. (*Id*). He indicated he still had not been seen by a dentist and his broken tooth was still causing him a "great amount of pain and discomfort." (*Id*). He asked that the situation be immediately rectified. (*Id*). In response, he was told that the provider would be consulted. (*Id*).

That same day, Dr. Veronica Dockery reviewed his request and authorized Plaintiff to have Naproxen for one more week. (ECF No. 25-4 at 15). She said any longer could cause intestinal bleeding and increase cardiovascular risk. (*Id*).

On September 24, 2016, the dentist was at the WCDC seeing inmates. Plaintiff was not seen. Plaintiff submitted a grievance. (ECF No. 25-3 at 6). He stated that the broken tooth was causing him great pain and discomfort especially when he ate. (*Id*). He said he had been on the dental list for thirty days and was at risk of infection as well as other "compounded" medical problems. (*Id*).

Plaintiff asserted that he had not been provided acceptable medical care by the provider and the duty to provide care fell back on the facility. (*Id*).

In response, Sergeant Byrd said there were over fifty inmates on the list and that the dentist only had time to see twenty inmates. (ECF No. 25-3 at 6). Plaintiff was informed that the twenty inmates seen had been on the list longer than he had. (*Id*). Sergeant Byrd said he would forward the grievance to the medical supervisor. (*Id*).

Plaintiff testified that in addition to his requests/grievances, he complained verbally about his dental pain. (ECF No. 25-7 at 73). Each time he complained, Plaintiff stated he was merely advised he was on the dental list. (*Id*).

On October 1, 2016, Plaintiff submitted a request that stated he was in a "great amount of pain" and extremely uncomfortable. (ECF No. 25-3 at 7). He stated it was very difficult to eat and sleep. (*Id*). He noted he had been receiving Naproxen since August 26, 2016, but had been told that day that his prescription had run out and no new order had been placed. (*Id*). He stated he still had not seen the dentist and needed "to be given medication for this pain. In fact I would really like to be given something strong[er] because although Naproxen alleviates some of the pain it does not remove it all. . . . I am being denied medical treatment, being forced to wait in excess of 36 days, as of today. . . . I am in pain and I need to see a dentist, until that point I need to at the very least be given pain medication without interruption." (*Id*).

Sergeant Byrd responded that the grievance dealt with medical issues and would be forwarded to the medical supervisor. (ECF No. 25-3 at 7). Nurse Christopher Dillard responded that Plaintiff was added to the provider list for review. (*Id*).

Plaintiff testified he was first seen by medical personnel on October 1, 2016. Prior to this day, Plaintiff had only received written responses to his requests and been prescribed over-the-counter medication. Plaintiff was seen by Nurse Dillard. Plaintiff testified his gums were swollen, red, and infected. He was prescribed an antibiotic, Cephalexin, and Acetaminophen.

On October 1, 2016, Plaintiff submitted a second medical request noting he had just spoken to the nurse on staff and was told he should request to have his liver and kidney function tested due to the length of time and amount of Naproxen he had taken. (ECF No. 25-3 at 8). He was advised by Nurse Regina Walker that his request had been placed with the provider for review. (*Id*).

Plaintiff received the Cephalexin until October 18, 2016, and the Acetaminophen until November 3, 2016. Plaintiff testified that the antibiotic helped "tremendously" with the pain. However, any time he ate or drank anything, Plaintiff stated it aggravated the condition regardless of the type of medication he was on.

Plaintiff testified that on October 4, 2016, medical staff noted the pain was improving with the antibiotics, prescribed Acetaminophen, and ordered a blood test for liver and kidney function. (ECF No. 25-4 at 12).[1] Blood was drawn that same day. (*Id.* at 10). On October 10, 2016, the results of the blood test came back normal and Plaintiff was notified. (ECF No. 25-3 at 8).

On October 13, 2016, a request was put into the ADC for approval of the extraction of one tooth. (ECF No. 25-4 at 2). The following day, the extraction was approved. *(Id)*.

---

[1]The medical records appear to indicate Plaintiff was seen by Dr. Karas on this date. (ECF No. 25-4 at 11-12). However, in his affidavit, Dr. Karas makes no mention of having examined the Plaintiff. (ECF No. 25-8). Further, Plaintiff did not mention being seen by Dr. Karas during his testimony.

On October 14, 2016, Nurse Phebe Grothaus recorded that no abscess had occurred with respect to Plaintiff's tooth but that he was requesting extraction. (ECF No. 25-4 at 9). Nurse Grothaus noted that the top left back tooth was broken and decayed. (*Id*).

On October 15, 2016, the tooth, what was left of it, was pulled. (ECF No. 25-4 at 3); (ECF No. 25-4 at 8). Plaintiff testified the dentist ordered salt rinses. An order was entered for Keflex 1000 mg., twice a day, for three days. (*Id*). Plaintiff was also given Tylenol for the pain. (ECF No. 25-7 at 62). Plaintiff indicated he was in some pain for about a week with the first couple of days being the worst. (*Id*). The Tylenol helped. (*Id*).

On October 16, 2016, Plaintiff submitted a request that stated he had been told by the dentist to rinse his mouth with salt water every three to four hours. (ECF No. 25-3 at 9). Despite this, Plaintiff stated he had only been given one "tiny" salt package and told to put his request for salt on the kiosk. (Id); (ECF No. 25-7 at 95). Plaintiff stated that he could not follow the dentist's instructions and had to wait twelve hours for the opportunity to speak to someone in medical and receive more salt. (ECF No. 25-3 at 9).

On October 17, 2016, Nurse Landon added a prescription for a salt rinse twice a day. (ECF No. 25-4 at 8). The following day, Nurse Landon specified the prescription was for one salt packet twice a day to be poured into a cup of water. (*Id*). Plaintiff was not to be given the salt packet. (*Id*). On October 18, 2016, Nurse Landon Harris advised Plaintiff that he would put in a prescription for salt until Saturday. (ECF No. 25-3 at 9).

According to Plaintiff, he was given one salt packet each day from October 17, 2016, until October 22, 2016, to help fight infection by rinsing his mouth with salt water to help heal his wound.

Plaintiff testified that, more often than not, there was no salt on the medication cart. (ECF No. 25-7 at 96).

According to the medication records, Plaintiff received salt in the evening on October 17th, in the morning and evening on October 18th, and 19th, and no salt on the 20th and 21st. (ECF No. 25-4 at 19-20). No medication records cover the 22nd, so presumably Plaintiff did not receive the salt that day. (*Id*). Ultimately, Plaintiff testified he suffered no physical harm from the failure to provide him with the salt. (ECF No. 25-7 at 97).

According to Dr. Karas, "[t]here is no medical evidence of any damage or injury caused by the passage of time from the point [Plaintiff] first reported his desire to see a dentist to the time the tooth was extracted." (ECF No. 25-8 at 4). Dr. Karas states that the:

> decision to treat [Plaintiff] for his pain with Naproxen was medically appropriate. [Plaintiff's] decayed, and subsequently broken, tooth was not a medical emergency that required immediate treatment. As noted by [Plaintiff], the Naproxen successfully managed the pain [Plaintiff] experienced for some time from the tooth. [Plaintiff] was also provided Acetaminophen for pain.
>
> [Plaintiff] did not suffer an abscess or infection of any sort related to his tooth. Lab analysis showed that [Plaintiff] did not suffer any kidney or liver damage as a result of the Naproxen or any other medication.

(*Id.* at 4-5).

Plaintiff testified that dental care is ultimately Sheriff Helder's responsibility. Plaintiff believed Sheriff Helder oversaw the contract pursuant to which the dental care was provided. Although Plaintiff never directly communicated with Sheriff Helder, Plaintiff believed the Sheriff was aware of Plaintiff's dental issues. (ECF No. 25-7 at 45). Plaintiff testified that: "There's absolutely no doubt in my mind that if Sheriff Helder were to come down here and tell this dude, 'Hey, this man needs to have this. He needs medical attention, or he needs dental attention, take care

of it,' that they wouldn't have gotten me to a dentist within a day or two." (ECF No. 25-7 at 32-33). Further, Plaintiff testified that he believed Sheriff Helder knew the dentist came only once a month and was not able to see every one. (*Id.* at 50).

Plaintiff believes Dr. Karas and Karas Medical Services should be held liable because nothing was done to assess the level of dental needs of each detainee or to provide the level of necessary dental care to ensure that the staffing was sufficient to handle the number of patients. (ECF No. 25-7 at 67). In Plaintiff's opinion, Dr. Karas was bound to provide a dentist "enough [of the time] to take care of the people who need to see him" in a timely manner. (*Id*).

Moreover, Plaintiff stated that provision of dental care just one day a month was grossly inadequate given the number of inmates. Plaintiff noted that Dr. Karas was not taking any steps to schedule more dentists. (ECF No. 25-7 at 76). Plaintiff testified that Dr. Karas was fully aware that this problem existed and did nothing to correct it. (*Id*). Plaintiff believed "there's some motivation that's -- whether it be financial, whether it be, you know, workload, whether it be -- he's choosing not to deal with the issue." (*Id*).

Plaintiff testified that although he did not have direct access to Dr. Karas, he took the steps necessary to make Dr. Karas' staff aware of his dental problem. (ECF No. 25-7 at 76). Plaintiff does not believe Dr. Karas personally targeted him but that he made poor choices in the way he ran his business. (*Id.* at 77).

Plaintiff testified that Sergeant Byrd was the point of first contact. Plaintiff would file his grievances and they would go to Sergeant Byrd who forwarded the grievances to the medical department. Plaintiff felt that grievances about inadequate treatment by medical staff should not

be just forwarded to medical staff for response. (ECF No. 25-7 at 29). Plaintiff felt the grievance should be followed up on, sent up the chain of command, and some action taken. (*Id.* at 30 & 46).

Plaintiff testified that it was his belief that one aspect of Sergeant Byrd's duties was to ensure that contracted people do what they are supposed to do. (ECF No. 25-7 at 30). At the very least, Plaintiff felt Sergeant Byrd should "point the problem out to superiors that I had no access to." (*Id.* at 29). Plaintiff also believed Sergeant Byrd had the authority to expedite things and get Plaintiff the dental care he needed. (*Id.* at 33). Plaintiff testified that Sergeant Byrd was aware of the problem and knew Plaintiff was in pain.

Plaintiff testified he named Nurse Harris and Nurse Walker as Defendants because their names showed up in response to his requests. (ECF No. 25-7 at 79). According to Plaintiff, Nurse Harris and Nurse Walker merely responded that Plaintiff was on the dental list and then did nothing more. (*Id.* at 80). They did not assess Plaintiff's condition even though they knew Plaintiff was in pain. (*Id*). Nothing was done to resolve the issue. (*Id.* at 81). Ultimately, with each Defendant, Plaintiff testified it comes down to the fact that he had to wait too long to see the dentist. (*Id.* at 82). He indicated he was constantly in some degree of pain, had problems eating, and difficulty sleeping. (*Id*).

Plaintiff testified his official capacity claim is based on the fact that the WCDC only has a dentist come once a month when it had an inmate population of 700. A limited number of people can be seen and those not seen have to wait another month. Plaintiff maintains this is grossly inadequate for painful dental conditions.

In Plaintiff's opinion, you should have to wait no more than ten working days to see a dentist about a toothache. (ECF No. 25-7 at 57). Given the large number of detainees in the jail, Plaintiff thought thirty days should be more than sufficient to get a detainee to the dentist. (*Id*).

Plaintiff seeks compensatory damages for the pain and suffering he experienced as a result of having to wait fifty-one days to have his tooth extracted. (ECF No. 25-7 at 89-90). Plaintiff indicated he was in pain to some degree or the other at all times. (*Id*). He also had difficulty eating and sleeping. (*Id*).

## II. SUMMARY JUDGMENT STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a Court should not adopt that version of the facts

for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

Defendants argue they are entitled to summary judgment for the following reasons: (1) there is no proof of any personal involvement on the part of Sheriff Helder; (2) Plaintiff does not have a constitutional right to a grievance process; (3) the Medical Defendants were not deliberately indifferent to Plaintiff's dental care; (4) Defendants are entitled to qualified immunity; and (5) there is no basis for official capacity liability.

**(A). Denial of Dental Care in General**

Section 1983 provides a federal cause of action for the deprivation, under color of law, of a citizen's "rights, privileges, or immunities secured by the Constitution and laws" of the United States. In order to state a claim under 42 U.S.C. § 1983, plaintiff must allege that the defendant acted under color of state law and that he violated a right secured by the Constitution. *West v. Atkins*, 487 U.S. 42 (1988); *Dunham v. Wadley*, 195 F.3d 1007, 1009 (8th Cir.1999). The deprivation must be intentional; mere negligence will not suffice to state a claim for deprivation of a constitutional right under § 1983. *Daniels v. Williams*, 474 U.S. 327 (1986); *Davidson v. Cannon*, 474 U.S. 344 (1986).

"In order to state a cognizable [denial of medical care] claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany*

*v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). The Eighth Circuit applies the deliberate indifference standard to both pretrial detainees and convicted inmates. *Ryan v. Armstrong*, 850 F.3d 419, 425 (8th Cir. 2017).[2]

In the case of dental care, it has been said that "'[d]ental care is one of the most important medical needs of inmates.'" *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001)(*quoting Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)). The Eighth Circuit has recognized that "[t]oothaches can be excruciatingly painful, and dental care is an important part of proper health care." *Hartsfield v. Colburn*, 491 F.3d 394, 397 (8th Cir. 2007).

Defendants make no argument that the Plaintiff's toothache did not constitute a serious medical need. The question then becomes whether the Defendants acted with deliberate indifference. "[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86 F.3d 761, 765 (8th Cir.1996). In *Dulany*, 132 F.3d at 1239, the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to [a] prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical

---

[2]In *Ryan*, the Eighth Circuit applied the deliberate indifference standard to a denial of medical care claim brought by a pretrial detainee. In a footnote, it stated it was unnecessary to decide whether *Kingsley v. Hendrickson*, ___ U.S. ___, 135 S. Ct. 2466 (2015), applied to the deliberate indifference claims at issue in the case. In *Kingsley*, "the Supreme Court rejected analysis of a defendant's subjective state of mind in excessive force cases and concluded 'the appropriate standard for a pretrial detainee's excessive force claim was solely an objective one.'" *Ryan*, 850 F.3d at 429 n.3 (*quoting Kingsley*, 135 S. Ct. at 2472-73). This Court will follow Eighth Circuit precedent and apply the deliberate indifference standard to this denial of medical care claim.

malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

Thus, mere delay, in the provision of medical or dental treatment, without more, does not amount to an Eighth Amendment violation. It is only when the delay is harmful that the Eighth Amendment is violated. *See e.g., Dulany*, 132 F.3d at 1239.

### (B). Individual Capacity Claim Against Sheriff Helder

First, Defendants argue that Sheriff Helder is entitled to judgment in his favor on the individual capacity claims. The Court agrees. A claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). "The general responsibility . . . for supervising the operation of a [facility] is not sufficient to establish personal liability." *Estate of Rosenberg by Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995). "[A] bare allegation that someone in supervisory authority has been deliberately indifferent, without any specification of that person's contact in fact with the plaintiff, [or] even an explicit charge of inadequate training or supervision of subordinates, is [not] sufficient to state a [§ 1983] claim." *Id.; see also Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010).

### (C). Responses to Requests and Grievances

Second, Defendants argue that Plaintiff has no constitutional right to a grievance procedure. While this is true, the Court does not believe Plaintiff has asserted a claim based on alleged inadequacies in the grievance process. *See e.g., Lombolt v. Holder*, 287 F.3d 683, 684 (8th Cir. 2002)(denial of grievances does not state a substantive constitutional claim). Rather, Plaintiff contends Nurse Harris and Nurse Walker exhibited deliberate indifference to his serious medical needs when nothing was done in response to his repeated complaints of a toothache accompanied by pain and difficulty eating and sleeping other than stating he was on the dental list.

Further, Plaintiff contends Sergeant Byrd exhibited deliberate indifference to his serious dental needs when he failed to investigate Plaintiff's claims that the medical staff were delaying his access to dental treatment. Sergeant Byrd, however, had no medical or dental training and his reliance on medical staff to evaluate the Plaintiff's need for dental treatment does not amount to deliberate indifference. *See e.g., Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011)("The prison officials lacked both medical and dental expertise and were entitled to rely upon Nurse Porter's medical opinion"). Sergeant Byrd is entitled to judgment in his favor.

**(D). Deliberate Indifference**

Third, Defendants maintain that even construed in the light most favorable to the Plaintiff, there are no genuine issues of material fact as to whether they exhibited deliberate indifference to Plaintiff's serious dental needs. Here, Plaintiff first complained of a toothache when he was booked in on August 8th. Prior to his being seen by medical personnel, Plaintiff submitted the following written requests: August 25th (pain and discomfort); September 3rd (tooth had broken off at the gumline increasing pain and discomfort and making it difficult to eat); September 23rd (great amount of pain and discomfort); September 24th (great pain and discomfort especially when he ate); and October 1st (great pain and discomfort--difficult to eat and sleep).

On October 1st, Plaintiff testified he was seen by Nurse Dillard.[3] Plaintiff stated his gums were swollen, red, and infected. At this point, he was prescribed an antibiotic. Plaintiff's tooth was examined again on October 14th, the day prior to the next visit by the dentist, at which time the nurse noted no abscess. The following day, the tooth was extracted.

---

[3] There are no notations in the medical record made by Nurse Dillard. (ECF No. 25-4).

The Court believes there are genuine issues of material fact as to whether Dr. Karas, Nurse Harris, and Nurse Walker exhibited deliberate indifference to Plaintiff's serious dental needs. Despite Plaintiff's repeated complaints, no physical examination was performed until more than a month after Plaintiff's initial written request and nearly two months after he was booked in with a complaint of having a toothache noted. The protocol outlined by Dr. Karas was not observed. As noted above, no physical examination was done for a significant period of time, Plaintiff was not prescribed an antibiotic until more than a month later, and there was no determination of the severity of Plaintiff's condition. Without an examination, it is unclear how Defendants could have made the determination that Plaintiff did not have an emergent dental condition. After Plaintiff's tooth was extracted, Plaintiff was not provided with the salt rinses on the basis prescribed by the dentist.

**(E). Qualified Immunity**

Next, Defendants argue they are entitled to qualified immunity. Analyzing a claim of qualified immunity requires a two-step inquiry. *Jones v. McNeese,* 675 F.3d 1158, 1161 (8th Cir. 2012). "An official is entitled to qualified immunity unless (1) the evidence, viewed in the light most favorable to the nonmoving party, establishes a violation of a federal constitutional or statutory right, and (2) the right was clearly established at the time of the violation." *Robinson v. Payton,* 791 F.3d 824, 828 (8th Cir. 2015). "Unless the answer to both these questions is yes, the defendants are entitled to qualified immunity." *Krout v. Goemmer,* 583 F.3d 557, 564 (8th Cir. 2009).

The Court has already answered the first inquiry affirmatively. The answer to the second inquiry is also yes. The law was clearly established that detainees had a right for treatment of dental conditions. *See e.g., Hartsfield*, 491 F.3d at 397. Further, it is clearly established that a delay in the provision of dental care can constitute deliberate indifference. *See e.g., Boyd v. Knox*, 47 F.3d 966,

969 (8th Cir. 1995)(three week delay in sending referral for dental care after observing swollen and infected tooth was unreasonable and raised triable fact questions). Defendants are therefore not entitled to quaffed immunity.

**(F). Official Capacity Claim**

Finally, Defendants argue there is no basis for an official capacity claim. "Liability for a constitutional violation will attach to a municipality only if the violation resulted from an official municipal policy, an unofficial custom, or a deliberately indifferent failure to train or supervise an official or employee." *Bolcerson v. City of Wentzville, Missouri*, 840 F.3d 982, 985 (8th Cir. 2016)(citation omitted). Here, Defendants indicate the policy followed is to put inmates on the dental list in the order the complaint was filed. The only exception is for those inmates determined to have an emergent condition. A broken or decayed tooth is not considered an emergent condition. Rather, as defined by Dr. Karas, "[a]n emergent dental need would usually entail either trauma from a blow to the mouth or jaw (causing a lost, but intact tooth, that could be put back into place) or fever and a marked amount of facial swelling due to a dental abscess." (ECF No. 25-8 at 2).

As dental cavities are "rampant" in detention centers, the dental list is usually full. (ECF No. 25-8). With a dentist coming only one day a month for a few hours at a time with a jail population in the hundreds, it could conceivably take months for an inmate to be seen. Clearly, there is a genuine issue of material fact as to whether this practice itself constitutes deliberate indifference and resulted in the deprivation complained of in this case.

## IV. CONCLUSION

For the reasons stated, I recommend that Defendants' Motion for Summary Judgment (ECF No. 23) be **GRANTED IN PART** and **DENIED IN PART.** Specifically, the Motion should be

granted with respect to all claims against Sergeant Byrd and to the personal capacity claims against Sheriff Helder. In all other respects, the Motion should be denied and this matter scheduled for a jury trial.

**The parties have fourteen (14) days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 30th day of November 2017.

/s/ *Erin L. Wiedemann*
 HON. ERIN L. WIEDEMANN
 UNITED STATES MAGISTRATE JUDGE